IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANTONIO MARQUES SMITH SR.,
Plaintiff,

v. Case No. 23-CV-191-jdp

ERIC PETERS, et al.,
Defendants.

---

PLAINTIFF'S RESPONSE MOTION IN OPPOSITION TO STATE DEFENDANTS' AND DEFENDANT EMILY LELAND MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

---

PLEASE TAKE NOTICE that plaintiff, Antonio Marques Smith, by and through himself, pro se., hereby submit his Response Motion In Opposition to State Defendants' and Defendant Emily Leland Motion for Summary Judgment on Exhaustion Grounds, for an order denying all herein Defendants Motion to Dismiss for failure to exhaust his administrative remedies. The grounds for this Response motion to deny defendants motion to dismiss on exhaustion grounds are set forth in the accompanying brief, Plaintiff's Proposed Findings of Fact, Plaintiff's declaration and supporting documents.

Defendants is hereby notified that if they does not oppose Plaintiff's Proposed Findings of Facts that properly rely on evidentiary submissions in the record, the court will accept the facts as unopposed. Defendants is directed to Fed. R. Civ. P. 56 and the procedures set forth in this court's Preliminary Pretarial Conference Order governing summary judgment procedure.

Date this 13th day of July, 2024.

Antonio Marques Smith

Waupun Correctional Institution
P.O BOX 351
Waupun, WI 53963

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANTONIO MARQUES SMITH SR.,
Plaintiff,

v. Case No. 23-CV-191

ERIC PETERS, et al.,
Defendants.

---

PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO STATE DEFENDANTS AND DEFENDANT EMILY LELAND BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

---

## INTRODUCTION

Plaintiff, Antonio Marques Smith Sr. was allowed to proceed on serval claims: (1) retaliation claim against defendants Eric Peters, Emily Leland, Ryan Blount, Kevin Pitzen, Cooper Lange, Nathan Fosshage, and Larry Fuchs; (2) First Amendment claim against Eric Peters, Cooper Lange, Ryan Blount, Kevin Pitzen, Emily Leland, Nathan Fosshage, and Larry Fuchs based on the opening and reading of his legal mail; (3) First Amendment claim against Eric Peters, Emily Leland, Ryan Blount, Kevin Pitzen, Cooper Lange, Nathan Fooshage, and Larry Fuchs based on the withholding of his legal and other mail; (4) Fourth Amendment claim against Eric Peters, Emily Leland, Ryan Blount, Kevin Pitzen, Cooper Lange, nathan Fosshage, and Larry Fuchs based on the opening, reading, and withholding of his legal mail; (5) Fourth Amendment claim against Eric Peters, Emily Leland, Ryan Blount, Kevin Pitzen, Cooper Lange, Nathan Fosshage, and Larry Fuchs based on a strip-search of Smith; (6) Eight Amendment claim for the use of excessive force claim against Eric Peters, Emily Leland, Ryan Blount, Kevin Pitzen, Cooper Lange, Nathan Fosshage, Larry Fuchs,

Nathan Fosshage, Larry Fuchs, Dustin Rohwer, Jermiah Phipps, and Jeffery Nguyen; and (7) class-of-one equal protection claim against Eric Peters, Emily Leland, Ryan Blount, Kevin Pitzen, Cooper Lange, Nathan Fosshage, and Larry Fuchs. (Dkt. 13: 13.)

Smith did in fact, properly exhaust all claims he was allowed to proceed on.

STATEMENT OF THE CASE

Smith is a State prisoner in the custody of the Wisconsin Department of Corrections (DOC) and was housed at Columbia Correctional Institution during all times relevantwhen the incidents occurred giving raise to this lawsuit. (Dtk. 13.) Fuchs was the Warden at Columbia Correctional Institution (CCI) during all the time relevant to this lawsuit. (Dkt. 22.) Blount was the Security Director at CCI during the time relevant to this lawsuit. Id. All other State defendants were correctional officers of varying ranks at CCI during the time relevant to this lawsuit. Id. Defendant Emily Leland was a Columbia County Sheriff's Detective at Columbia County Sgeriff's Department, and working in her official capacity during all the time relevant to this lawsuit. (

Smith was incarcerated at CCI during all times relevant to this lawsuit. At the order of Peters, on October 26, 2022, staff conducted a "No Knock" cell entry on the Smith occupied by himself. Smith was palced into handcuffs and removed from the cell that he occupied alone, escorted to Restrictive Housing Unit (RHU) where he was strip searched and held in a room until Peters arrived to the (RHU) and spoke with him. Peters informed Smith that he (Peters) would be conducting a search of Smith's property for suspected illegal substances, and that he would be held in RHU pending an investigation. Peters informed Smith that he would be testing all of his paper's for the presence

of illegal substance. Peters stated to Smith, that he was aware of lawsuits being itigated by Smith against another Security Supervisor name Chris, and made additional comments that Smith believed was a threat of harassment based upon the lawsuits Smith had pending anaginst another prison employee, and based upon alleged behavior of Smith at other prison's where Smith had previously been housed. Peters search and drug-testing of Smith's property failed to yield any illegal substances, and Smith was subsequently relased from RHU back into general population status. Smith wrote directly to Peters superiors, defendants Fuchs and Blount, and complained about the threats of retaliation and harassment he took from Peters statements. Fuchs nor Blount responded to Smith's correspondences, however, when Smith returned to general population approximately one week after he wrote to Peters superiors, Smith did have an opportunity to speak with Fuchs and Blount on the unit he was assigned. Fuchs and Blount both, assured Smith that an investiagtion into Smith's claims would take place, and that Smith would receive notice of the conclusion concerning the investigation. Smith was satisified with Fuchs and Blount promise of an investigation. (Smith decl. ¶¶¶¶¶ 7-11.)

Smith returned to general population on Novemebr 3, 2022, and on Novemebr 16, 2022, just thirteen days after returning to general population, Peters ordered staff to conduct yet another "No Knock" cell entry on the cell Smith was assigned to. Defendant Rohwer and Phipps, entered the cell first as Smith set facing the cell door on his bunk and typing on his typewriter. Rohwer and Phipps entered the cell yelling "don't move" and with no movement or putting forth any resistence, Smith was "football tackled" by Rohwer then Phipps, who both outweighed Smith by more than 100 pounds and 6-8 inches taller.

While Smith lie prone on the cell bunk completely defenseless under the full body weight of Rphwer and Phipps, Smith's wrists was being twisted to the point where he believed that his wrist would break. Smith informed Rohwer that he had recently undergone an ACL surgery on his left knee, and asked Rowher to remove his knee that was pressed with his full body weight in the back of Smith injured knee. Rohwer responded with more weight shifting into Smith's knee, and Smith's wrist received additional pressure. When Smith was football tackled, his typewriter was knocked to the cell floor.

Defendant Nguyen and Lange both, followed behind Rohwer and Phipps. Nguyen applied leg restraints on Smith, and handcuffs. Lange then ordered Rohwer and Phipps both, to remove Smith from the cell, which Rohwer and Phipps complied by snatching Smith from the prone position, and standing him upright. Lange then ordered Smith to be removed from the cell. Rohwer and Phipps, began to escort Smith down the tier hallway moving at a pace with large steps that Smith couldn't possibly keep up with due to the leg restraints and due to Smith's injured knee that had just been reinjured by Rohwer. Smith asked if he could be escorted more slowly, and in response to Smith's request, Lange ordered that Smith be placed against the tier hallway concert wall. Rohwer and Phipps both, quickly followed Lange's directive, and Smith was slammed against the concert wall, and lift off his feet by his wrist. Nguyen then slammed Smith's head into the concert wall. Lange stated to Smith, that he was resisting, and ordered that Smith be transported in an awaiting restraint-chair that they had brought with them. Smith was escorted backwards with nguyen holding Smith in a tactic chokehold, while Rohwer and Phipps continued to hold on to Smith's wrist. Smith was placed into the restraint-chair, strapped

in, and transported to the RHU.

Upon Smith's arrival to the RHU, he asked Lange why they was not recording the incident, and why was he being treated in such a manner when he hadn't done anything. Lange then directed a staff member working the RHU to retrive a handheld video recorder. Lange informed Smith, that he had received a call from Peters, and directed to conduct a "No Knock" cell entry on Smith's assigned cell. Lange stated to Smith, that there would be a "staff assisted strip-search of his person conducted. Smith objected, and stated that he must be provided with an opportunity to stip himself, and that he had done nothing to warrant a staff assisted strip-search. Lange ignored Smith's objections, and directed Rohwer and phipps, to remove Smith from the straint-chair. After Smith was removed from the restraint-chair, he was pinned up against a concert wall, with Rohwer on his right-side, and Phipps on Smith's left-side. Nguyen proceeded to cut Smith's personal clothing from his body over Smith's objections to his personal property being destoryed. After Smith's clothing was removed, Nguyen proceeded to search Smith's entire body, by rubbing his hands over Smith's body. Nguyen used his hands to spread Smith's buttocks, and to lift Smith's testicles. The search of Smith's body did not yield any contraband. (Smith Celc. ¶ 13-20; Smith's Amended Complaint Dkt. Unknown.)

On November 28, 2022, Smith received a false conduct report authored by Peters, where Peters alleged that three envelopes addressed to Smith had been confiscated, and tested positive for the presence of illegal substances. The first envelope came from Wisconsin Department of Justice. The second envelope came from the District Court, Chief Judge Pamela Pepers chambers. Anthe third letter came from Smith's

private Appellate Attorney. Smith disputed that these envelopes tested positive for the presence of any illegal substances as alleged by Peters in the Adult Conduct Report. The three envelopes that is the subject of the false conduct report, was opened outside of Smith's presence and confiscated by Peters and Leland. The contents with the envelope was read by Pters and Leland. The papers and envelopes was allegedly tested by Leland using the MX908 drug testing device that leland had allegedly brought to CCI in order to test Smith's legal mail. When the conduct report was served upon Smith, he opted for a Full Due Prcess Hearing to challenge the allegations made in the conduct report. (Smith Decl. ¶ 26; Smith's Amended Complaint, Dkt Unknown.)

On or about December 7, 20, 2022, Smith's Due process hearing took place where defendant Pitzen presided over as the hearing officer. Smith contends that the hearing was marred with procedural deficiencies, and Smith was found guilty of all charges. A 120 days' disciplinary segregation and 30 days' loss of hpone disposition was imposed. (Smith Decl. ¶27; Smith's Amended Complaint Dkt. Unknown.)

On December 13, 2022, defendant Fosshage informed Smith that he knew of a conspiracy against Smith, which involved serval people. Fosshage informed Smith that his envelopes and papers never underwent drug-testing, and that none of Smith's papers actually tested positive for the presence of illegal substances. Fosshage named Pitzen, Blount, the hearing committee as a whole, and likely other's who was trying to protect Peters, and was essentially, apart of the group of conspirators. Fosshage directed Smith to send him a correspondence, and he would conduct an investigation and return Smith's correspondence with the information

needed for Smith to prove that his papers did not test positive for drugs, and who was all involved in the conspiracy. Fosshage stated that Blount and Pitzen were trying to protect Peters, and that they knew there was no evidence of Smith's guilt. (Smith Decl. ¶¶ 33-34; Smith's Amended Complaint, Dkt. No. Unknown.)

Smith submitted his appeal of the hearing officer decision to find him guilty on the false conduct report authored by Peters, On December 8, 2023. The Reviewing Authority on Smith's appeal, Fuchs, returned a decision on December 20, 2022, which reversed in whole, the hearing officer's decision. Fuchs claimed that the papers was tested in his presence, and it yield negative results for the presence of drugs. (Smith Decl. ¶¶ 30-31; Smith's Amended Complaint, Dkt. No. Unknown.)

On January 27, 2023, prison staff notified Smith that he needed to report to the prison property room for legal mail. When Smith arrived to the property room, there was mail from Wisconsin Department of Justice, and from Smith's private attorney. The postal dates on the envelopes showed that Smith should have received his mail weeks prior. Smith filed an inmate complaint, and learned from the ICE Office, that Peters had opened and read Smith's mail outside of Smith's presence in addition to withholding the mail for at least two weeks from being delivered. Blount later told Smith when he spoke with Bount about his legal mail still being subjected to violations, the more complaints Smith filed and lawsuits, the harder his life would get at CCI, and mentioned Peters earlier statement from October 26, 2022, that Smith's time at CCI would be uncomfortable. (Smith Decl. ¶37; Smith's Amended Complaint, Dkt. No. Unknown.)

On February 27, 2023, just seven days after Blount threatened Smith with continued retaliation if he continued complaining, Smith was again placed in segregation under Peters and Pitzen orders for an alleged investigation. Although 21 days is the time limit for an imate to be held in Temporary Lockup, unless the Warden extend the time limit, Smith remained in segregation under that status for 22 days until he complained, and received an extension signed by Blount. Blount claimed that the extension was need for a Due process hearing, but Smith had yet to receive a conduct report, so at the time of the entension, no "Due Process hearing" was scheduled. Blount then signed a false conduct report, and designated the false conduct report as a Major violation. Smith went on a Full Due Process hearing, and was found guilty by the hearing officer, Pitzen, and given a disposition of 90 days' in segregation. Smith filed an appeal, and the Reviewing Authority, Fuchs, reduced the disposition to 30 days segregation, and ordered Smith to be relased from segregation that same day. (Smith Decl. ¶38-40.)

EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES.

When Smith was first threatened by Peters on October 26, 2022, he followed the "chain of command" by contacting Peters superiors, Blount and Fuchs. Smith did not receive a response from Peters superiors, however within a week of writing to Blount and Fuchs, Smith was relased from segregation, and he spoke with Blount and Fuchs. Smith was informed by Fuchs and Blount, that there would be an investigation into Smith's statements to Blount and Fuchs, that Smith contributed to Peters. Fuchs and Blount both, informed Smith that they would contact Smith with the results from their inevstigation. Smith was satified with Blount and Fuchs

promise of an inestigation, and awaited contact. Based off prior complaints Smith have filed in the Inmate Complaint Review System (ICRS) there would be no parallel investigation conducted by the ICE Office's when a superior is investigating an alleged incident brought to their attention. Based off this understanding which came directly from the ICE's office in prior complaints filed by Smith, he believed that he could not file an inmate during an active investigation, and he had exhausted his administrative remedies by putting the prison, Warden and Security Director, on notice of the issue. (Smith Decl. ¶10-11; Plant. Ex. B and C; PPFOF ¶12..)

On November 16, 2022, Smith submitted an inmate complaint, which he complained that staff used excessive force causing him injuries, conducted an unneccessary staff-assisted strip search, and damged/destoryed his personal property during the staff assisted strip-search when they cut his personal clothing from his body. This complaint was filed on the same day of the incident. However, the ICE's Office returned Smith's complaint, and directed Smith to write his words within the lines on the complaint form, and contact the person who's in the chain of command concerning the inssues being raised, although the ICE Office did not provide who Smith should contact in the chain of command. (Smith Decl. ¶20; PPFOF No. 13.)

On November 29, 2022, Smith resubmitted his complaint alleging staff used excessive force during the November 16, 20222, "No Knock" cell entry, conducted an unneccessary staff assisted strip-search, and in the process of conducting the staff assisted strip-seach

destoryed Smith's personal property by cutting his clothing. Again, and for the second time, the ICE's Office returned Smith's properly submitted complaint. The ICE Office allged that Smith complaint contained multiple issues, and therefore would not be processed unless corrected. Although Smith did not believe that his complaint contained multiple issues, because the November 16, 2022, incident was one issue where multiple things occurred, such as the excessive force, the unneccessary staff assisted strip-search, and the destruction of Smith's personal property. Under the ICE's Office theory, Smith would need to file three complaints on one actual incident that contained mulitple issues all within 14 days of occurrance, which would be mathemathically impossible to do so without the ICE Office Rejecting one or two of the complaints for being filed beyond the 14 days. So Smith made a decision believing that he was in compliance with the ICE's Office directions in their Returned ICE letter, Smith crossed out the section in his complaint that related to his clothing being damaged during the staff assisted strip-search, and resubmitted the complaint to the ICE's Office along with an Interview Information/Request informing the ICE's Office of the changes made. In the body of Smith's complaint, he does state that the incident was ordered by Peters in retaliation. (Smith Decl. ¶21; PPFOF No. 14.)

On November 30, 2022, the ICE's Office again, for the third time, returned Smith's properly submitted complaint concerning the incident that occurred on November 16, 2022. This time, the ICE's Office claimed that Smith filed two complaints in one calendar week, which violated the one complaint per calendar week rule under DOC 310.07(2). (Smith Decl.

Smith again, resubmitted his complaint to the ICE's Office along with an Interview Information/Request informing the ICE's Office that they were an error to return his complaint, that the other complaint filed fell under the exception rule to the one complaint per calendar week pursuant to 310.07(2). Smith explained that the other complaint filed was a PREA complaint concerning staff sexual misconduct. Smith provided the ICE's Office with that PREA Complaint Number CCI-2022-17854. Smith accused the ICE's Office of trying to frustrate the complaint process, and the continueous returning of this complaint concerning the incident from November 16, 2022, was to automatically, run Smith out of time, and reject his complaint for being untimely filed. Smith requested that the ICE's Office stop engaging in such tactics, and file his complaint. Smith demande that his complaint be processed, rather it be Dismissed or Rejected, but do not return the complaint, and Smith will simply appeal either decision. (Smith Decl. ¶22-23; PPFOF No. 15.)

Smith resubmitted his complaint concerning the November 16, 2022 incident a total of five times. (PPFOF Nos. 13-16.)

On December 5, 2022, the ICE Rejected Smith's complaint concerning the November 16, 2022, as being filed beyond the 14-day time limit from the date that the incident occurred. (Def. Ex. 1002-002.)

On December 11, 2022, I filed an REQUEST FOR REVIEW OF REJECTED COMPLAINT with the Warden's Office concerning Complaint Number WCI-2022-18089, which is the complaint concerning the November 16, 2022, incident. Smith alleged that the ICE was in error by Rejecting a properly submitted complaint serval times, and that the ICE ignored the one complaint filed per calendar exception rule. On

December 14, 2022, Fuchs upheld the ICE's decision to Reject Smith's complaint from the November 16, 2022, incident. (Def. Ex. 1002-006.)

On December 7, 2022, Smith was found guilty at a Full Due Process hearing for conduct report #294247. At the hearing, Smith alleged to the hearing officer that the conduct report was a fabercation, and motivated by retliation for filing complaints against Peters, and behind lawsuits Smith had filed against another Security Supervisor known to Peters. Pitzen presided over the hearing as the hearing officer. Pitzen imposed a disposition against Smith of 120 dys segregation time, and 30 days loss of phone. (Smith Decl. ¶26-29; PPFOF No.18-19.)

On December 8, 2022, Smith filed with the Warden's office, an APPEAL OF A CONTESTED HEARING from conduct report #294247. In the body of Smith's appeal, he alleged that the hearing officer, Pitzen, did not record his full statement, but instead summarized the statement Smith made which violated Smith's Due Process rights. Smith alleged in his appeal, that the conduct report was a fabercation and motivated by retaliation. Smith stated in his appeal that Peters wrote the false conduct report because Smith filed complaints against Peters, and from lawsuits Smith filed against another prison employee, Christopher Stevens, who Peters was familiar with. Smith stated in his appeal, that Peters and Leland both, violated Smith's rights when they confiscated his legal mail, opened the mail outside of Smith's presence, and read the mail and never delivered it. Smith stated that he was being conspired against, and that Smith have complained about Peters acts of retaliation, harassment and a conspiracy to Fuchs in the past to no avoid/actions being taken.

Smith stated that his rights was violated during the Due Process procedure when he was denied having Leland submit a statement as a witness. (Smith Decl. ¶30; PPFOF No. 20; Def. Exs. 1008-001 thru 003.)

On December 20, 2022, conduct report #294247, was reversed in whole after the papers was tested in the presence of the Warden, and the results reurned negative for the presence of any illegal substances. (Smith Decl. ¶31; PPFOF No. 21; Def. Exs. 1006-013; 1008-001.)

There is no other administrative remedies available to inmates who have received a conduct report, is found guilty of a rule violation after a Full Due Process hearing, and that hearing officer's decision is appeal to the Warden, who has the final decision on the merits of the conduct report. Since the Warden reversed Smith's findings of guilt from conduct report #294247 in whole, and Smith raised all of his issues at the hearing, and again in his appeal, he has exhausted his available administrative remedies on the claims the court allowed Smith to proceed on concerning retaliation for the conduct report being written, the seizure of Smith's legal mail by Peters and Leland, the opening and reading of Smith's legal mail outside of his presence, and the conspiracy claim against all defendants.(See Administrative Code 310.08(2)(a) which states that an inmate may not use the ICRS to raise "[a]any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordence with the 303."

On December 13, 2022, Fosshage informed Smith that Peters was retaliating against him from complaints he had filed and lawsuits.

Fosshage stated to Smith, that the conduct report #294247 was fabercated and the papers never did test positive for the presence of any illegal substances. Fosshage stated to Smith, that Blount, Pitzen and the hearing committee was all trying to protect Peters, and they knew that the conduct report was false. Fosshage stated that there was a conspiracy underway against Smith, and that if Smith wrote to him, he would respond back with all the information Smith would need to prove that the conduct report was flase, and who was all involved. Fosshage made these statements to Smith, after Smith had already been found guilty on conduct report #294247, and after Smith had already appealed the hearing officer's decision to the Warden. Fosshage's promised of an investigation, and assurance made to Smith that he would receive all the information from Fosshage to prove retaliation, conspiracy, and that the conduct report was fabercated, led Smith to believe that Fosshage's promise of an investigation percluded him from filing an inmate complaint based off the information provided by Fosshage. (Smith Decl. ¶¶33-34; PPFOF No.22; Plaint. Exs. B and C.)

On February 1, 2023, Smith filed an inmate complaint concerning three piece's of mail that was designated by the prison as being legal mail. When Smith arrived to the property room, he noticed that the dates on the envelopes should have allowed him to receive the mail at least two weeks prior to the date they were being delivered. One of the envelopes appeared to have already been opened, and resealed. Smith alleaged in his complaint, and cited conduct report #294247 as evidence, that the mishandling of his incoming legal mail was a continued retaliation, harassment, and believed the acts was controlled by an ongoing conspiracy. The ICE had enough information

to investigate Smith's claim of retaliation. The ICE had information provided to them by Peters, that he opened and read Smith's legal mail. The ICE had enough information to know that only Blount, the security director, had the authority to order Smith on a mail monitor. The prison was put on Notice that Smith's mail was held for at least two weeks at the prison. The ICE recommeded that Complaint Number CCI-2023-1770 be Dismissed. The Warden, Fuchs, accepted the recommedation of the ICE, and Dismissed Smith's Complaint. (Smith Decl. ¶35; PPFOF Nos. 23-24.)

On March 10, 2023, Smith filed an appeal of the Warden's decision from Complaint Number CCI-2023-1770 to the Secretary's office. In the body of Smith's appeal to the Secretary's office, he stated that the mishandling and delayed delivery, opening of his legal mail outside of his presence, was retaliation. Smith further cited conduct report #29427 in the appeal, explaining that the mishandling of his mail is connected to conduct report #294247. Had the prison, and the Secrtary'e office investigated Smith's claim of retaliation, or not, the fact that Smith provided the prison with such a belief in his complaint, satisify the requirement under PLRA. Further, appealing the Warden's decision definitely satisify the PLRA requirement, and complete the grievance process. There's no language in the inmate complaint policy, that direct inmates to state retaliation or anything related to such claim. However, Smith did state he was being retaliated against, and cited the conduct report #294247 that would support Smith's belief. (Smith Decl. ¶¶35-36; PPFOF Nos. 25-27.)

On or about, March 21, 2023, Smith was served with conduct report #309615. Smith opted for a Full Due Process hearing to challenge the false conduct report. After Smith provided his statement and evidence, the hearing officer found him guilty, Pitzen, and imposed a 90 day segregation sanction.(Smith Decl. ¶30; PPFOF No. 28.)

On March 29, 2023, Smith filed an appeal of the hearing officer's decision, and alleged in his appeal that the conduct report was false, and was retaliation. Smith again cited conduct report #294247 in his appeal, as he mentioned at the hearing to support his belief that the conduct report was fabercated and retaliatory. Smith did put the prison on Notice, that conduct Report #309615 was another product of a conspiracy and retaliation. Smith's statement at his hearing, and again, in the body of his appeal, satisify the PLRA requirement as appealing conduct report #309615 concluded all available administrative remedies he had. (Smith Decl. ¶40; PPFOF Nos. 29-31.)

STANDARD OF REVIEW

Under the Prison Litigation Reform Act, prisoners must exhaust all available administrative remedies before filing a lawsuit in federal court about prison conditions. 42 U.S.C.§ 1997(e)(a). To comply with § 1997 e(a), a prisoner must take each step with the administrative process, Pozo v. MacCaughty, 286 F.3d 1022, 1025 (7th Cir. 2002), which include following instructions for filing an initial grievance, Cannon v. Washington, 418 F.3d 714, 718 (7th cir. 2005), as well as filing all neccessary appeals, Burrell v. Powers, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025.

To exhaust administrative remedies in Wisconsin, inmates must follow the complaint review process set forth in the Wisconsin Administrative Code ch DOC 310. An inmate must file an inmate complaint with the institution complaint examiner, who will then make a recommendation to the reviewing authority. After the reviewing authority makes a decision, the inmate may appeal to the corrections complaint examiner, who makes a recommendation to to the secretary's Office of the Department of Corrections for a final decision. Wis. Admin. Code § 310.07 - 310.19. The purpose of these requirements is to give the prison administratives a fair opportunity to resolve the grievance without litigation. Woodford v. Ngo, 548 U.S. 81, 88-89 (2006). Failure to exhaust administrative remedies under § 1997 e(a) is a affirmative defense that must be proven by the defendants. Davis v. Mason, 881 F.3d 982, 985 (7th Cir. 2018). Quoting Spencer v. Barker, United States District Court, Western District of Wisconsin, 2020 WL 6561631, November 9, 2020.

A party is entitle to summary judgment if it shows that there is no genuine dispute as to any material fact and it is emtitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), also see Anderson. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. Thus, to survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in favor. Brumment v. Sinclair Board, Grp. Inc., 414 F.3d 686, 692 (7th Cir. 2005) Quoting Jackson v. Matushak, U.S.D.Ct. Eastern District of Wisconsin, 2021 WL 3409290, August 4, 2021.

But unless a State has establish a rule or regulation prescribing the contents of such a complaint or grievance, the inmate "need not lay out the facts, articulate legal theories, or demand partiular relief." Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002).

ARGUMENT

I. AS TO DEFENDANT EMILY LELAND

The Wisconsin DOC grievance chapter §310. does not provide inmates a with remedy to exhaust any issues that an inmate may have with an agency that is not a contractor with the DOC, or the DOC itself. Defendant Leland is employed by Columbia County Sheriff's Department (C.C.S.Dept.) which is not an agency contracted with the DOC. Even if the "C.C.S.Dept." was a contractor, the Wis. Admin. Code does not direct inmates on how to file a grievance concerning non-DOC staff/ employees. The PLRA only provide that a prisoner exhaust the administrative remedies made available to them. Leland is not employed by the DOC. Leland is law enforcement. Although Leland entered into the prison settings while acting in her official capacity, and violated Smith's Constitutional rights and aligned herself with prison staff, there is no reason for Smith to know that he must file any grievances specifically against Leland for her acts that violated Mr. Smith. See Saddy v. Agnesian Health Care, 2014 WL 4656117 *2, U.S.Dis. Ct., E.D. Wis. (September 16, 2014). In "Saddy" case, the court denied defendants motion to dismiss on exhaustion grounds, even though Agnesian Health Care was a contractor, because there was no way for "Saddy" to know that he was required to file a specific grievance against non-DOC persons. In this case, Leland is not even a person who is contracted with the DOC. Leland is employed by an outside

law enforcement agency who engaged in a conspiracy with DOC employees to violate Smith's rights.

Furthermore, if the court does accept Leland argument that Smith should have filed some type of grievance alleging misconduct specifically against Leland, Smith did in fact, exhaust on the claims against Leland when he stated at his due process hearing, that Leland assisted Peters in the fabercated conduct report by falsely claiming that Smith's papers tested positive for the presence of illegal substances. Smith did state at the conduct report hearing, that Leland violated his rights when Leland withheld Smith's mail, opened Smith's mail outside of his presence, read Smith's mail that came from Smith's private appellate attorney. After Smith was found guilty at the conduct report hearing, Smith only remedy was to file an appeal to the Warden. Smith filed the appeal of the hearing officer's decision, and the Warden reversed the hearing officer's decision in whole, after it was determined that no illegal substances was on Smith's incoming legal mail. In Smith's appeal to the Warden, he alleged that he was being retaliated against due to complaints Smith filed against Peters, and lawsuits Smith filed against another Security Supervisor Peters was obviously acquainted with in some compacity. Since Smith stated at his due process hearing, that Leland was a c0-spiractor, that Leland violated Smith's rights when she seized Smith's legal mail, opened that mail outside of Smith's presence, and read it for context, and did not deliver the mail, then again, made those same arguments on appeal to the Warden who is the final decision maker as to the merits of a conduct report, Smith exhausted the administrative remedies made avilable to him. See(Smith Decl. ¶27-32; PPFOF Nos. 18-21.)

There's nothing in the greivance chapter that direct inmates to state how they should exhaust when alleging retaliation against staff. If the DOC wish to argue that inmates should make certain particular arguments, or provide specific information when the inmate allege retaliation, then that specific direction must be included in the language provided in Admin. Code § 310. which govern the DOC grievance procedures for inmates. Case law support that prisoners are not required or "need not lay out the facts, articulate legal theories, or demand particular relief." Strong v. David, 297 F.3d 646, 649 (7th cir. 2002).

Smith has also met the requirements of exhaustion as it relates to the State/prison defendants concerning the claims that derives from conduct report #294247, which involves the withholding of his legal mail, opening his legal mail outside of his presences, seizing that legal mail, reading the legal mail, writing a false conduct report all in a conspiratory fashion that was motivated by retaliation. The Inmate Complaint Review Sustem (ICRS) direct inmates not to use the ICRS to complain about anything related to a conduct report, and for the inmate to raise those complaints on a hearing and through the disciplinary chapter, which is the 303. Smith followed the procedure as outlined in 310.08(8). After an inmate file an appeal with the Warden, the inmate can only use the ICRS to challenge the procedure used in the disciplinary process. Conduct report #294247 was appealed to the Warden, and the appeal was successful, as the warden reversed the hearing officer's decision in whole. Smith was satisified with that decision, and couldn't not further appeal using the ICRS if Smith was not satisified. Thus, Smith did fully exhaust all adminstrative remedies made availave to him.

Although some court decisions suggest that inmates must state at a minimum... must identify two things: the protected conduct that provked the retaliation and the retaliatory act. The DOC grievance procedure under chapter 310. does not provide inmates with such informational requirement when claiming that they are being retaliated against. See Flores v. Gardner, 2018 WL 4853038, at *3 (W.D. Wis. Oct. 5, 2018). Quoting Nigl v. Litscher, 2019 WL 6909587, at *4 (W.D. Wis. Dec. 19, 2019). The PLRA purpose is to put the prison on "Notice" of an issue prior to filing a federal lawsuit. Inmates cannot be expected to know anything outside of what has been provided within the grievance procedures provided to them. Courts who has expanded the meaning and purpose of the PLRA, and demanded that the inmate state specific language within their complaints concerning retaliation, even when the language of such is not in the grievance policy instructing as much, is to expand what an inmate is required to do. Further, an inmate who is not a trained lawyer, would have to have knowledge of prior court decisions on such a matter before filing their complaint. This is yet another unfiar tactic that prison defendants take, and some courts accept. Nevertheless, Smith did provide enough information to put the prison on notice that Peters was harassing him, and that harassment was in retaliation due to Smith filing lawsuits against another prison employee, and due to Smith complaining to Peters superiors and filing complaints. Those charged with investigating such claims was part of the conspiracy, and at every turn, Smith was met with obstruction and resistence, and thus, the retaliatory acts persisted.

## II. SMITH'S CLAIM RELATED TO COMPLAINT NUMBER CCI-2023-1770 WAS FULLY EXHAUSTED

Smith filed Complaint Number CCI-2023-1770 after learning that three piece's of his legal mail was withheld from being delivered to him for at least two. (PPFOF No. 23.) In the body of Smith's complaint, he alleged that the mishandling of his mail was a continued act of retaliation, and Smith cited conduct report #294247 where the conspiracy and retaliation was due to Smith filing lawsuits against a prison employee, and filing complaints against Peters. The conduct report #294247 proved that the conduct report was false. The prison/ICRS was provided with enough information to investigate Smith's claims made within the complaint, that the mail incident raised in the complaint, was believed to be in connection with the mail incidents from conduct report #294247, which was in retaliation. Without fully investigating the issues Smith raised in the body of his complaint, the ICE recommeded to the Reviewing Autjroity Dismissal. The Warden, Fuchs, adopted the ICE recommendation, and Dismissed Smith's complaint. (PPFOF No. 24.)

Smith was required to appeal the Warden's decision in order to meet the PLRA requirement prior to filing a federal lawsuit. On March 10, 2023, Smith filed his appeal with the Corrections Complaint Examiner (CCE). In the body of Smith's appeal to the CCE, he stated that the mishandling of his legal was a continued act of retaliation, and cited conduct report #294247 as supporting evidence that he has experience prior violations of his legal mail, and alleged then, that the mail interferences in conduct report #294247, was movitivated by retaliation due to Smith filing lawsuits against DOC employees and filing complaints against Pters, who happens to be the exact same person who intercepted the three piece's of mail, opened and read that mail, then delayed delivery of the legal mail by at least two weeks. The CCE recommeded to the Secretary's office that Smith's

complaint be Affirmed. The Secretary's office Affirmed Smith's appeal/complaint on March 31, 2023. (PPFOF Nos. 25-27.)

Smith clearly exhausted his administrative remedies as to his legal mail being withheld, opened and read, outside of his presence, and that the mail interferences was done in a continued retaliatory manner.

The court has ruled that inmates are not required to file multiple complaints alleging the same acts, that once the inmate has put the prison on Notice of an issue, and if that issue presists, the inmate previous complaint is enough to meet the PLRA requirements. Since Smith complained to Fuchs and Blount, and was promised an investigation, the prison was put on notice. (PPFOF No. 12; Smith's Decl. ¶10-11). Then again, Smith put the prison on "Notice" that Peters was retaliating against him, and others was involved in a conspiracy to assist Peters, in conduct report #294247. **Turley v. Rednour, 729 f.3d 645, *650, (7th cir. July 3, 2013)** "In order to exhaust their remedies, prisoners need not file multiple, successive grievances rasing the same issue (such as prison conditions or policies) if the objectable condition is continuing)." However, Smith did raise in his complaint that the retaliation is continuous, and Smith gave conduct report #294247 as evidence to support the continued mail interferences and that it was in retaliation by Peters. See **Recla v Martinez, 2010 WL 2633926 *4, U.S.Dis.Ct., E.D. Wis. (June 25,2010).**

Defendant Leland claim that Smith did not specifically state her name in his complaints, but this is not required to satisfy PLRA. **Recla, 20 WL 2633926 at *4.** Smith is not required to know and identify every person who is apart of a conpiracy, and the specific roles that each co-conspiractor played.

## III. SMITH DID EXHAUST HIS AVAILABLE ADMINITRATIVE REMEDIES AS TO HIS EXCESSIVE FORCE CLAIM AND RETALIATION

On November 16, 2022, at Peters a no knock cell entry was conducted on the single cell Smith occupied. During the cell entry, Smith suffered injuries, was subjected to a staff assisted strip-search, which included staff cutting Smith's personal clothing from his body. On the same day of the incident, Smith submitted an inmate complaint. The ICE office returned Smith's complaint, and directed Smith to write within the line on the complaint form, and to contact the person who's in the chain of command. The ICE did not provide a person for Smith to contact in the chain of command. (PPFOF No. 13.)

Smith complied with the directives of the ICE office, and resubmitted his complaint on November 29, 2022. In the body of Smith's complaint, he recounted the incident from the beginning when staff first entered his cell to the end of the incident which is when Smith underwent a staff assisted strip-search that left his personal clothing destoryed. In the body of Smith's complaint, he stated that the incident was motivated by an act of retaliation carried out by Peters. The ICE office returned Smith's complaint again. This time, the ICE office instructed Smith that his complaint had multiple issues, because Smith complained of the excessive force, staff assisted strip-search, and his personal property being damaged. Although no where within the 310. that governs the DOC complaint system and procedures does it state an inmate is required to separate every possible issue that occurs during the course of one single incident, Smith decided to cross out the section of his complaint concerning his damaged personal property, and resubmitted the complaint with an Interview Information/Request form informing the ICE office of the changes he

made to the complaint in order to have the complaint processed. (PPFOF No. 14.)

On November 30, 2022, the ICE office returned Smith's complaint for the third time. The ICE office now alleged that Smith filed two complaints within the same calendar week, which violated 310.07(7) which states ""An inmate may not file more than one complaint per calendar week except that any of the following are not subject to the filing restrictions contained in this paragraph: (a) Complaints regarding the inmate's health and safety. (2) Complaint made under PREA." Smith resubmitted his complaint on November 30, 2022, and he informed the ICE office that the only other complaint filed was a PREA and safety complaint. (PPFOF No. 15; 17.)

On December 2, 2022, the ICE again, for the fifth time, returned Smith complaint. Smith resubmitted the complaint, along with a 3 page Interview Information/Request form explaining to the ICE office that complaint Number CCI-2022-17854 was a PREA related complaint for staff sexual misconduct, and 310.07(7) was the exception to the one calendar week complaint rule. Smith informed the ICE office that he was aware of the tactic that it was using, which was to continue returning his complaint until the 14 days time limit to file a complaint had expired, then the ICE would Reject the complaint for being untimely filed. Smith asked the ICE office to stop with the tactics, and stop returning his complaints, and either reject the complaint or dismiss the complaint, either way, Smith would appeal. On December 5, 2022, the ICE office Rejected Smith's complaint for being filed beyond the 14-days time limit to file a complaint after the occurance of the incident. Complaint Number CCI-2022-18089. (PPFOF No. 16.)

On December 8, 2022, Smith filed a REQUEST FOR REVIEW OF A REJECTED COMPLAINT, concerning Complaint Nunmber CCI-2022-18089. The Warden accepted the ICE's decision to reject the complaint. Smith fully exhausted this incident. (Smith Decl. ¶24.)

Courts has held "[p]risoner is not required to exhaust administrative remedies if those remedies are not truly available."Kaba v. Stepp, 458 f.3d 678, 684 (7th Cir. 2006). Adminstrative remedies will be deemed "unavailable" when prison officials do not respond to a properly filed inmate complaint or when they prevent a prisoner from exhausting through affirmative misconduct, such as denying a prisoner neccessary forms, destorying a prisoner's submissions, or requiring steps not mandated by regulation or rule. See Smith v. Buss, F.App'x 253, 255 (7th Cir. 2010) Quoting from Atwater v. Gugler, 2020 WL 3258767 at 4, U.S.Dis. Ct., E.D. Wis. (June 16, 2020). "The grievance process is not intended to be a game of "gotcha" or a test of the prisoner's fortitude of ability to outsmart the system." See Shaw v. Jahnke, 607 F.Supp.2d 1005, 1010 (W.D. Wis. 2009). Also see Ross v. Blake, 578 U.S. 632, 642, (2016) An adminstrative remedy provided by policy may be unavailavle in practice if an inmate cannot use it. ID. If jail staff are unwilling to provide relief to inmates who file grievance, or if they mislead, intimidate, or otherwise interfer with inmates who attempt to file grievances, that behavior can render an administrative remedy unavailavle. Id. at 643-44.

## IIII. DEFENDANTS FUCHS, BLOUNT AND FOSSHAGE PROMISES OF AN INVESTIGATION

In the week of ~~November 3-10~~, 2022, Smith spoke with Fuchs and Blount, concerning the threats of harassment by Peters to Smith

due to lawsuits filed against another security supervisor name Christopher Stevens, who Peters knew, both assured Smith that they would investigate his claim against Peters, and would let Smith know their findings. Since Fuchs was the Warden of CCI, and Blount was the direct supervisor of Peters, being Blount was the Security Director, Smith was satisified with their responses, and had no reason to file a complaint prior to Fuchs and Blount, contacting him in regards to their promise of an investigation. (PPOF NO. 12; Smith Decl. ¶10-11.)

On December 13, 2022, Fosshage stated to Smith that he was aware that there was a conspiracy underway to protect Peters against false conduct reports he had written against Smith. Fosshage named Bount, Pitzen and the hearing committee by name as some of those who was involved in covering up for Peters. Fosshage stated to Smith that his papers from his legal mail that was the subject of conduct report #294247, never did test positive for any illegal dubstances, and that he knew that Smith had been found guilty on the conduct report. Fosshage stated to Smith, that Peters was in fact retaliating against him. Fosshage directed Smith to send him a letter, and he would respond with the information Smith needed in order to fight and prove that the papers in his legal mail never tested positive for drugs, and that Smith was being retaliated against. Fosshage promised Smith, on video, and in the presence of two witnesses, that he would investigate the matter, and assured Smith that his correspondence would be responded to. Smith wrote Fosshage that same day, and had no reason to believe that Fosshage wouldn't do exactly what he had promised, which was to investigate everything he had told Smith, especially taking into consideration what Fosshage had verbally told Smith, on camera, and infront of two witnesses. (PPfOF No. 22;)

In Atkinson v. Mackinnon, 2015 WL 7176381, U.S.Dis. Ct., E.D. Wis., (November 12, 2015). The court held "By promising an investigation, the Warden told plaintiff that his claim was being put on hold. Appealing the decision then would be like an interlocutory appeal before the trial court is finish with the case. In this way, the investigation is best viewed not as one of serval remedies that plaintiff could obtain, but as a decision that plaintiff must wait for any remedy until the investigation is complete. Accordingly, I conclude that a prisoner does not have an "available" administrative remedy under § 1997 e(a) while prison officials are promising to investigate his claim." Id. at 4. The court further held that "case law support a conclusion that a prisoner in plaintiff's situation is not required to pursue a grievance while an investigation is pending." Id. at 4. The court cite serval cases to support this proposition. See **Mocnik v. Williams, 2006 WL 3538989 at** 5 (W.D. Wis. Dec. 6, 2006); Feliz v. Taylor 2000 WL 1923506 at 2 (E.D. Mich. 2000).

In the "Feliz" case, the court held:

> "[I]t is easy to understand why [the prisoner] did not request an appeal form.... At that time, plaintiff had every reason to believe that the MDDC was investigating his complaint of retaliation and that the outcome might be favorable to him... [I]t would be unfair to now bar plaintiff from bringing this action on the grounds that he failed to pursue a timely administrative appeal when plaintiff had no reason to think an appeal was neccessary at the time he received the MDDC's response to his step 1 grievance... based on the MDOC's response to plaintiff's step 1 greivance that an investigation of alleged wrongdoing was on going, plaintiff should not have been expected to treat that response as a final decision activating his appeal time." Id. at*2-3

In Brown v. Crook, 312 f.3d 109, 112 (3d Cir. 2002), the court held that a grievance when "he relie[s] to his detriment on the defendants' erroneous or misleading instructions that he must wait until the conclusion of an investigation before pursuing formal remedies."

In Swisher v. Porter County Sheriff's Dept., 769 f.3d 553, 555 (7th Cir. 2014) the court held: "if you are an inmate and you speak to senior jail officer's up to and including the Warden of the jail and are told not to file a gruivance because the officers understand your problem and will resolve it without need for you to invoke the formal grievance procedure and they don't tell you how to invoke that procedure, you are entitled to assume that you don't have to file a written grievance."

Here, in this case, Smith was promised an investigation by Peters senior official(s)...a direct Supervisor of Peters, Blount, and the warden himself, Fuchs, who would make the final decision on any complaints filed by Smith through the ICRS. It was responsible for Smith to believe that he could not file a formal complaint when there was an active investigation, or when a Superior staff has investigated the incident. Smith belief derive from previous complaints he has filed through the ICRS which govern all facilities/ prisons under the DOC jurisdiction. In Exhibit B and C, submitted by Smith, the ICE and Warden both stated and upheld the Dismissal of complaints that had been investigated by a Security Director, stating in Exhibit B, "Mr. Kind stated that this has been addressed with the staff involved. Because the allegations raised in this complaint have already been brought to the attention of Supervisory staff and are already under review, there is no need to conduct a parallel investigation in the ICRS." See Plaint. Exhibit B.

Plaint. Ex. C, states "SD Pusich verified that a Use of Force review was completed. Because the allegations raised in this complaint are already under review, there is no need to conduct a unilateral investigation in the ICRS."

The prison cannot mislead inmates in the grievance process, then claim that the inmate did not exhaust their administrative remedies through the ICRS, when the ICRS themselves are providing confusing and misleading information to prisoners.

Lastly, the **Atkinson** court held: "from these cases, it is reasonable to infer that the court of appeals would not require plaintiff to file an appeal when he did not do so in reasonable reliance on the Warden's representation that officials would conduct an investigation. Any other reading would turn the grievance process into a game of "gotcha," allowing prison officials to obtain dismissal of a claim as unexhausted after lulling the prisoner into believing that he was not supposed to use the grievance process. That is not how § 1997e(a) works."

CONCLUSION

Based on the facts, arguments, and supportive evidence with case law set forth above, defendants did not meet their burden in which is an affirmative defense that defendants must prove, plaintiff respectfully request that the court deny defendants their Motion for Summary Judgment for fauilure to Exhaust Administrative Remedies.

Dated: July 14, 2024.

Respectfully submitted,

Antonio Marques Smith,
Plaintiff, Prose.

Waupun Correctional Institution
P.O Box 351
Waupun, WI 53963